Josie Mourne *v.* State Compensation Commissioner *et al.*

(No. 7454)

Submitted January 11, 1933.    Decided March 28, 1933.

*Brown, Jackson & Knight* and *Herman Bennett,* for appellant.

514

■■■■■■■■■■■■■■■    ■■■■■■■■

*Howard B. Lee*, Attorney General, and *R. Dennis Steed*, Assistant Attorney General, for respondents.

LITZ, JUDGE:

Ed Mourne received a fatal injury February 24, 1931, while employed by the Buffalo Eagle Mines, Inc., at Braeholm, Logan County, leaving a widow, Josie Mourne, residing near Nelsonville, Ohio. Her application for compensation was rejected by the compensation commissioner after making an ex parte investigation based upon affidavits, on the ground that she was not a dependent widow within the meaning of chapter 23, article 4, section 13, Code 1931, providing that ''Notwithstanding anything herein contained, no sum shall be paid a widow or widower who shall have been living separate and apart from, or has been abandoned by the employee, and who shall not have been supported by him or her at the time of the injury causing death.''

Upon objection being noted by claimant, a hearing was ordered by the commissioner and proof, in the form of depositions taken in her behalf. She testified that she and deceased were married October 11, 1919, and lived together continuously until 1927, when they ''broke up housekeeping'' while residing at Morrisvale, Boone County, West Virginia, and thereafter lived together occasionally; that she last saw him April, 1929; that he wrote her regularly, sending her about $23.00 in currency each month, up to the time of his death; that she did not attempt to preserve the letters but was able to find four of them which she exhibits with her testimony, as follows: Letter Exhibit ''C'', dated at Morrisvale, W. Va., March 18, 1928, in which he stated that if she and her son, Clarence Young, with whom she was then living near Nelsonville, Ohio, desired to rent a house in town he would do his best to make it a home for them all, and that he was sending her $10.00. Letter Exhibit ''F'', dated at Columbus, Ohio, May 23, 1929, in which he states that he had been seeking work without success and was sorry that he had no money to send her. Letter Exhibit ''E'', dated at Columbus, Ohio, July 16, 1929, in which he acknowledged receipt of a letter from her, stated he was sorry he could not send her any encouragement, and expressed his intention of returning to the

■■■■■■■■

mines at Morrisvale, where he had worked a number of years, as he felt it necessary to increase his earnings. Letter Exhibit "D", dated at Morrisvale, W. Va., September 22, 1929, in which he acknowledged receipt of a letter from her, stated that he had left Columbus on a "spree", was then employed at the Morrisvale mines, and had worked 68 hours the previous week. Her son, Clarence Young, with whom she lived near Nelsonville, Ohio, during the absence of her husband, testified that he delivered letters from the rural delivery box to his mother almost weekly between February, 1930, and February, 1931, postmarked Braeholm, W. Va., and remembers seeing her several times take currency from the envelopes addressed to her in the handwriting of her husband; that during the same period she contributed to the expenses of the household and paid a doctor's bill incurred for herself; and that she had no source of income except the money received from her husband. Alex Guenter, formerly superintendent of the mines and postmaster at Morrisvale, testified that he knew of Mourne's writing his wife frequently, and had several times lent him money upon the representation that he wanted it to send her; that Mourne was addicted to "sprees" lasting sometimes for a week; and that he was a neighbor of the Mournes when they lived at Morrisvale and knew of no disagreement between them. Mrs. Dessie Guenter, wife of Alex Guenter, gave similar evidence respecting the apparent domestic harmony between the Mournes. Clifford Young, brother of claimant, testified that she stayed at his home at Nelsonville, Ohio, between December, 1927, and April, 1928; that Mourne frequently visited her while she was there and wrote to her when he was away; that he never saw her take money from the letters, but she had money while in his home; and that he did not know of her having any other source of support. Mrs. Elsie Young, wife of Clifford Young, testified that while claimant stayed at their home Mourne sent money to her twice a month by mail, part of which she used to pay a doctor's bill; and that Mrs. Mourne later moved to Greens Run, about ten miles from Nelsonville, where she resided with her son during 1930 and 1931.

Affidavits taken during the ex parte investigation by inspectors of the compensation department follow: Elizabeth

Robins, who kept a boarding house at Braeholm, stated that Mourne lived at her home for about four months before he was injured; that during that period he never went to see his wife nor did she visit with him; that he stayed drunk when not working and, so far as she knew, never sent claimant any money; and that while there Mourne told affiant he had not seen his wife since August, 1929, and never wanted to see her again because she "pulled more" for her people than she did for him. Mrs. Mourne introduced as part of her testimony a letter to her from Mrs. Robins, dated Braeholm, W. Va., June 20, 1931, in which the Robins woman stated that she could and would prevent claimant from receiving compensation for the death of her husband if she did not pay a board bill of $48.50 he owed her at the time of his death. H. C. Avery, cashier of the Buffalo Eagle Mines, Inc., stated that Mourne was employed by the company January 16, 1930, and on his employment card it was noted that in case of accident to notify his wife, Josie Mourne, Nelsonville, Ohio; that he never knew of his sending her money, but that Mourne had stated to him in a casual way that he had a wife in Ohio; and that he drew at pay days from small sums to amounts not exceeding $20.00. Mary Mourne, sister-in-law of deceased, living at Nelsonville, Ohio, stated that claimant told her on February 24, 1931, that she had not heard from her husband since April, 1929, and did not know where he was; but admitted that when Mourne last visited his wife at Nelsonville, both expressed to affiant their intention to re-establish a home. Earl Mourne, brother of deceased, stated that, so far as he knew, his brother was not supporting claimant at the time of his death.

It will be observed that the evidence for claimant was taken in the form of depositions, while the evidence on which the commissioner based his finding consisted of affidavits secured upon the ex parte investigation. We are of opinion to reverse the ruling complained of, and remand the case to afford claimant an opportunity to cross-examine the affiants, and with the right to either party to offer further proof.

*Reversed and remanded.*